UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-10-910 |
| | § | |
| RAMIRO VELASCO-GARCIA | § | |

**ORDER**

On this day came on to be considered Defendant Ramiro Velasco-Garcia's Motion to Suppress Evidence. (D.E. 12.) For the reasons set forth below, Defendant's Motion to Suppress is hereby DENIED.

## I. Factual and Procedural Background[1]

On September 1, 2010, Robstown, Texas Police Officer Eddie Valadez was posted on U.S. Highway 281, observing southbound traffic south of the Falfurrias Border Patrol Checkpoint. Officer Valadez was operating as part of a task force with several federal agencies, including Immigration and Customs Enforcement, whose primary purpose was to search for weapons, drugs, and currency traveling along U.S. Highway 281, a well-known drug corridor. Valadez was instructed to stop cars only for legitimate traffic infractions, though he was not given a citation book, and in fact gave only warnings to individuals whom he stopped. Valadez stopped five vehicles in the three hour period relevant to this case.

While on duty along U.S. Highway 281, Officer Valadez observed a white 1997 Toyota Camry driven by Defendant Ramiro Velasco-Garcia, traveling south behind a red minivan. Believing the Camry to be following the minivan too closely (approximately

[1] Unless otherwise noted, all of the information in this section originates from testimony at the November 4, 2010 hearing on Defendant's Motion to Suppress.

one car length behind), Officer Valadez followed the car and checked its Illinois license plate. The results indicated that the car belonged to an individual living in Chicago, IL.

Officer Valadez initiated a traffic stop of the Camry on the basis of Texas Transportation Code § 545.062(a), which prohibits tailgating.[2] Officer Valadez asked Mr. Velasco to exit his car and spoke with him between his patrol car and the Camry. Officer Valadez asked Defendant for his license and proof of insurance, and advised him of the reason for the traffic stop. Defendant produced a California license, but stated that he did not have insurance papers because the car belonged to a friend. Valadez did not, however, run a computer check on Mr. Velasco's license. (D.E. 17 at 9.)

Upon being informed that he had violated Texas Transportation Code Section 545.062(a), Velasco-Garcia apologized and claimed that he was unfamiliar with the area. Officer Valadez then inquired into Velasco-Garcia's travel plans. Velasco-Garcia stated that he was traveling from Chicago to Penitas, Texas, to visit a friend who owned a tire shop, then to visit family in San Antonio. Velasco-Garcia stated that he did not know the name of the owner of the car he was driving, nor the name of the friend in Penitas whom he was planning to visit. Velasco-Garcia stated that he intended to purchase the vehicle, and was taking it on a test drive. Officer Valadez stated that Mr. Velasco-Garcia appeared nervous during questioning, as evidenced by shaking hands, and he did not find Velasco-Garcia's story to be credible. Valadez testified that Defendant's nervousness indicated to him that "something was not right about the stop."

[2] This section provides: "An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway." Tex. Transp. Code § 545.062(a).

After asking these questions (approximately six minutes after initiating the stop), Valadez gave Defendant an oral warning for the traffic violation. Valadez did not, however, immediately return Defendant's license. Rather, he asked Velasco several questions regarding the contents of his vehicle, and asked Velasco whether he would consent to a search. At this time, Officer Valadez was alone with Defendant. Velasco consented, and other law enforcement officers soon arrived to conduct the search. Officer Valadez estimated that approximately eight minutes passed from the initiation of the traffic stop to the time that Defendant consented to the search.

During their search of the vehicle, officers noticed only one key in the ignition and found scratched tool markings on one of the seats, which was evidence of tampering. The officers opened a back seat of the vehicle, and found $50,000 in a hidden compartment. Defendant was then placed under arrest. A total of approximately 14 minutes passed between the inception of the traffic stop to the discovery of the currency and Defendant's arrest. (D.E. 15 at 3; D.E. 17 at 3.)

Defendant was indicted on September 22, 2010, for the importation, sale, and distribution of narcotic and dangerous drugs, in violation of 21 U.S.C. § 841(a)(1), and thereafter, performing or attempting to perform an act to distribute the proceeds of this unlawful activity by attempting to make such a delivery to persons in McAllen, Texas, in violation of 18 U.S.C. § 1952(a)(1). (D.E. 7.)

On October 16, 2010, Defendant filed a Motion to Suppress, seeking to suppress the currency found in the Camry. The Court held a hearing on Defendant's Motion to Suppress on November 4, 2010. At the hearing, the parties argued their various positions and Police Officer Eddie Valadez testified before the Court.

Defendant originally raised three bases for his motion. First, he contends that the police seizure of Defendant was not justified at the inception of the stop, as there was insufficient evidence that Defendant had violated Section 545.062(a) of the Texas Transportation Code. Second, he contends that the detention exceeded what was reasonable, rendering his consent tainted. Third, he argues that his consent was not voluntary under the totality of the circumstances. (D.E. 12 at 2-3.)

The United States filed a Response on November 2, 2010. (D.E. 15.) The United States argues that (1) the traffic stop was justified at its inception, (2) because Defendant's detention was reasonable, his consent was not tainted, and (3) based on the totality of the circumstances, Defendant's consent was voluntary. (D.E. 15 at 3-5.)

After this Court held a suppression hearing, in which issues arose as to the reasonableness of Defendant's continued detention, Defendant filed a supplemental brief in which he argued that Officer Valadez lacked reasonable suspicion to extend the traffic stop. (D.E. 17.)

## III. Discussion

### A. Reasonableness of Stop

#### 1. Legal Framework

The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. U.S. v. Shabazz, 993 F.2d 431, 434 (5th Cir. 1993).

A court must analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968). Under this standard, the Court must make a two-part inquiry. "First, [the court] examine[s] whether or not the officer's decision to stop the vehicle was justified at its

inception. Second, [the court] determine[s] whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place. An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime. If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." U.S. v. Pack, 612 F.3d 341, 350 (5th Cir. 2010) (citing U.S. v. Brigham, 382 F.3d 500, 506-07 (5th Cir. 2004)); see also U.S. v. Jones, 234 F.3d 234, 241 (5th Cir. 2000).

The Fifth Circuit has concluded that as part of a traffic stop an officer may, for example, (1) examine driver's licenses and vehicle registrations, (2) perform computer checks, (3) "ask about the purpose and itinerary of the occupants' trip," and (4) "ask questions on subjects unrelated to the circumstances that caused the stop, so long as these unrelated questions do not extend the duration of the stop." Pack, 612 F.3d at 350. The Fifth Circuit in Pack recently summarized its jurisprudence on traffic stops as follows:

> Detention during a valid traffic stop [does not] violate[] the detainees' Fourth Amendment rights where it exceeds the amount of time needed to investigate the traffic infraction that initially caused the stop, so long as (1) the facts that emerge during the police officer's investigation of the original offense create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot, (2) the length of the entire detention is reasonable in light of the suspicious facts, and (3) the scope of the additional investigation is reasonable in light of the suspicious facts, meaning that it is reasonable to believe that each crime

> investigated, if established, would likely explain the suspicious facts that gave rise to the reasonable suspicion of criminal activity.

612 F.3d at 358. An officer need not have "particularized suspicion" of the occurrence of a specific crime. Id. at 355.

**2. Application**

In this case, the first part of the Terry inquiry is easily resolved. The traffic stop was justified at its inception, in light of Officer Valadez's testimony that Defendant was traveling too closely behind another vehicle, in violation of Texas Transportation Code Section 545.062(a). The Court finds Valadez's testimony in this regard credible, and Defendant has not offered any evidence to contradict this testimony. The mere fact that Officer Valadez's ultimate motivation may have been to investigate drug trafficking, rather than enforce traffic laws is irrelevant to the constitutional question. U.S. v. Sanchez-Pena, 336 F.3d 431, 437 (5th Cir. 2003) ("[T]he constitutional reasonableness of the stop does not depend upon the actual motivations of the officer involved. An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses.") (internal citations omitted). The Court thus concludes that the traffic stop of Defendant was justified at its inception.

The second part of the Terry inquiry requires greater analysis. As the Fifth Circuit has stated, "[r]easonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the . . . seizure. Reviewing courts making reasonable suspicion determinations must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." Pack, 612 F.3d at 352. In evaluating whether or not an officer's suspicion

is reasonable, "due weight must be given ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Id. (citing Terry, 392 U.S. at 27; U.S. v. Arvizu, 534 U.S. 266 (2002)).

Here, Defendant relies upon two cases, U.S. v. Dortch, 199 F.3d 193 (5th Cir. 1999) and U.S. v. Jones, 234 F.3d 234 (5th Cir. 2000), wherein the Fifth Circuit concluded that an officer lacked reasonable suspicion to extend the scope of a detention. Defendant contends that his case is similar to Dortch and Jones, and thus requires the same result. (D.E. 17 at 5-8.) Defendant seeks to distinguish two other cases, U.S. v. Brigham, 382 F.3d 500 (5th Cir. 2004) and U.S. v. Pack, 612 F.3d 341 (5th Cir. 2010), wherein the Fifth Circuit found an extended detention to be justified by reasonable suspicion. (D.E. 17 at 8-10.)

The Government relies upon the following facts, which were developed between the time that Officer Valadez stopped Defendant's vehicle to the time that he issued the verbal warning for the traffic violation, to establish reasonable suspicion: (1) Defendant did not have insurance papers for the vehicle; (2) Defendant did not know the name of the car's owner; (3) Defendant indicated that he was "test driving" the car from Chicago to Penitas, Texas; (4) Defendant did not know the name of his friend in Penitas; (5) Defendant was traveling along a known drug corridor; and (6) Defendant appeared nervous.

In Dortch, the court found no reasonable suspicion based upon the following facts: (1) confusion as to the relationship between the defendant and the renter of the vehicle, (2) defendant was not an authorized driver on the rental agreement, (3) defendant gave inconsistent answers regarding his travel plans, and (4) defendant was nervous. 199 F.3d at 199. In Jones, the court found no reasonable suspicion based solely upon (1) inconsistent answers to certain employment questions and (2) defendant's arrest on drug charges. 234 F.3d at 241.[3] In both cases, the court found the subsequent searches of defendants to be unconstitutional, as the officers lacked "reasonable suspicion to justify the continued detention of the defendants." 234 F.3d at 241; see also 199 F.3d at 199-200. The Court disagrees with Defendant as to the similarities between the case at bar, as compared to Dortch and Jones. In those cases, the inconsistencies between the stories were considered minor, and few other facts supported a finding of reasonable suspicion.

Rather, the Court finds that the facts here are much closer to those in Brigham and Pack. In Brigham, the en banc court found that the following factors were sufficient to give rise to reasonable suspicion: (1) the defendant was not the owner or lessee of the vehicle, (2) the lessee was not present in the vehicle, (3) defendant and his companion's versions of their itinerary greatly conflicted, (4) the defendant was nervous. 382 F.3d at 508-09. Similarly, in Pack, the Fifth Circuit found the following circumstances sufficient to find reasonable suspicion: (1) Pack's extreme nervousness, (2) conflicting

[3] In the first Pack decision, the Fifth Circuit panel found that Dortch's particularized suspicion requirement was abrogated by the en banc panel in Brigham. 612 F.3d at 355. The panel later modified its opinion to withdraw this conclusion, stating instead that Brigham merely distinguished Dortch. 622 F.3d 383 (5th Cir. 2010). Some commentators, however, have argued that Brigham in effect overruled Dortch and Jones. See Charles F. Baird & Holly L. Black, Criminal Procedure-Fourth Amendment, 37 Tex. Tech. L. Rev. 729, 747 (2005) ("Judge Jones confessed in her dissent to the panel opinion [in Brigham] that she believed Dortch, Jones, and Santiago were wrongly decided and should be overruled. As the author for the en banc's majority opinion, she essentially accomplished her desired result.").

stories between Pack and his travel companion, (3) the stop occurred along a known drug corridor, (4) Pack had a suspended license, (5) Pack had admitted to prior arrests. 612 F.3d at 361.

In this case, the Court relies upon the testimony of Officer Valadez, a fourteen year police veteran, who the Court finds credible. Pack, 612 F.3d at 352 (the Court must give "due weight . . . to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience."). As Defendant was traveling alone, there is no inconsistent story to consider. Other considerations, however, give rise to reasonable suspicion. The following facts were discovered between the initial stop and issuance of the traffic warning, as stated by Officer Valadez: (1) Defendant was driving a car that he did not own; (2) Defendant could not name the owner of the car; (3) Defendant was driving from Chicago, Illinois to Penitas, Texas (a distance of approximately 1,400 miles) to visit a friend at a tire shop whose name he did not know; (4) Defendant stated that he was taking the car on a "test-drive" along this entire distance; (5) the traffic stop occurred along U.S. Highway 281, a known drug corridor; (6) Defendant could not provide insurance paperwork; and (7) Defendant appeared nervous (as evidenced by shaking hands). These facts, when taken together, support a finding of reasonable suspicion. See Pack, 234 F.3d at 361 (known drug corridor); see also U.S. v. Henry, 372 F.3d 714, 715 (5th Cir. 2004) (nervous behavior; unable to detail travel plans); U.S. v. Baird, 108 Fed. Appx. 893, 894 (5th Cir. 2004) (inadequate proof of insurance).

The facts in this case demonstrate that Officer Valadez "develop[ed] reasonable suspicion of additional criminal activity during his investigation of the circumstances that

originally caused the stop," and thus he was allowed to "further detain [Defendant] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." U.S. v. Pack, 612 F.3d at 350. The circumstances are much closer to Pack and Brigham, in which reasonable suspicion was found, than to Dortch and Jones, in which reasonable suspicion was lacking.

The Court also holds that the length of Defendant's entire detention was reasonable in light of the suspicious facts that Officer Valadez observed. Pack, 612 F.3d at 361. The entire length of the stop (from its initiation to Defendant's arrest) was approximately fifteen minutes, and there was no unreasonable delay during the course of the investigation.

Finally, the Court finds that the scope of the investigation that Officer Valadez conducted during the detention was reasonable in light of the suspicious facts that he had observed. Id. at 362. As the Fifth Circuit explained in Pack, "[c]onsidering the large volume of contraband that is moved along our major highways on a daily basis, especially in border states like Texas, a reasonable officer could fairly conclude that the most likely single alternative explanation, for the nervousness and irreconcilable stories raising reasonable suspicion of some contraband, is that the occupants are carrying contraband, particularly when the stop occurs on a highway that is frequently used by smugglers." Id. at 362. Thus, "it is reasonable for an officer confronted with such conduct to detain the occupants for a reasonable amount of time to investigate the possibility that they were carrying contraband." Id. Here, in light of the circumstances, Officer Valadez's decision to investigate the possibility of drug trafficking or proceeds

distribution was reasonable, as drug trafficking or proceeds distribution provided "a reasonably likely explanation for the suspicious facts that he had observed." Id.

The Court therefore concludes that Defendant's Fourth Amendment rights were not violated by Officer Valadez's investigation. The Court now considers Defendant's other arguments.

**B. Tainted Consent**

Because the Court has concluded that there was no Fourth Amendment violation in this case, Defendant's consent to search his vehicle was not constitutionally tainted. Brigham, 382 F.3d at 512 ("Absent a Fourth Amendment violation, Brigham's consent to search the vehicle was not unconstitutionally tainted.").

**C. Voluntariness of Consent**

Defendant contends that his consent to search was involuntary. (D.E. 12 at 5.) "Consensual searches . . . serve as an exception to the warrant requirement so long as the consent is free and voluntary." U.S. v. Fernandes, 285 Fed. Appx. 119, 126 (5th Cir. 2008) (citing U.S. v. Mata, 517 F.3d 279, 290 (5th Cir. 2008)). "The government's ability to rely upon the consent exception depends on two factors. First, the government must show that the consent was given voluntarily. . . Second, the prosecution must show that either the defendant himself consented to the search or that consent was obtained from a third party that had the ability to furnish valid consent." U.S. v. Jenkins, 46 F.3d 447, 451 (5th Cir. 1995) (citing Bumper v. North Carolina, 391 U.S. 543 (1968); U.S. v. Matlock, 415 U.S. 164 (1974)); see Morales v. Boyd, 304 Fed. Appx. 315, 318-19 (5th Cir. 2008) (citing Jenkins). Consent-to-search voluntariness is determined by a six-factor, totality-of-the-circumstances analysis. The factors are:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

Fernandes, 285 Fed. Appx. at 126 (citing Mata, 517 F.3d at 290). "No one of the six factors is dispositive or controlling of the voluntariness issue." U.S. v. Ponce, 8 F.3d 989, 997 (5th Cir. 1983). The government has the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. Id.

Here, there is no dispute that Defendant himself consented to the search; as such, the Court focuses only on the first factor, voluntariness. Defendant has provided no specific argument to support his position that his consent was not voluntary. (D.E. 12 at 5.) Application of the six factors above demonstrates that Defendant's search was in fact voluntary. First, while Defendant interacted with Officer Valadez during the course of the traffic stop, he was not in "custody" as that term has been defined. See, e.g., Maryland v. Shatzer, __ U.S. __, 130 S. Ct. 1213, 1224 (2010) ("[T]he temporary and relatively nonthreatening detention involved in a traffic stop or Terry stop . . . does not constitute Miranda custody."). Second, the Court has not identified any "coercive police procedures" during its review of this case, nor has Defendant specifically complained of any. Third, the Court finds that Defendant was fully cooperating with Officer Valadez prior to the search. He spoke openly with Officer Valadez outside of his vehicle and apologized for his violation of traffic laws. See, e.g., Fernandes, 289 Fed. Appx. at 126 ("Fernandes cooperated by coming outside to talk to the police, apologizing for smoking marijuana . . . ."). With respect to the fourth and fifth factors, the Court has no evidence as to Defendant's awareness of his right to refuse consent or his education and

intelligence. There is no evidence that Defendant is particularly uneducated or unintelligent. In any event, this is not required to show voluntariness. Ponce, 8 F.3d at 997 ("[P]roof that the suspect knew of his right to refuse consent, while relevant, is not required to show voluntariness."). Finally, while the Court lacks any specific information as to whether Defendant believed that incriminating evidence would be found, the sum total of the circumstances indicates that Defendant's consent was voluntary.

In light of all the circumstances, the Court concludes that Defendant's consent to search was free and voluntary. His motion to suppress on this basis must be denied.

## IV. Conclusion

For the reasons stated above, the Court DENIES Defendant's Motion to Suppress Evidence. (D.E. 12.)

SIGNED and ORDERED this 23rd day of November, 2010.

Janis Graham Jack
United States District Judge